RENDERED:  FEBRUARY 11, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0026-MR

DAVID W. TRENT                                                        APPELLANT

v.
APPEAL FROM ROWAN CIRCUIT COURT
HONORABLE DAVID A. BARBER, JUDGE
ACTION NO. 19-CR-00234

COMMONWEALTH OF KENTUCKY                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

COMBS, JUDGE:  This is a criminal case in which the Appellant raises several

challenges following his jury trial and the verdict of guilty.  Appellant, David W.

Trent (Trent), was convicted of receiving stolen property ($10,000.00 or more);

first-degree possession of a controlled substance; third-degree possession of a

controlled substance; and giving an officer false information.  He received a

sentence of ten years.  He appeals as a matter of right.

On September 17, 2019, James Montgomery parked his 2015 Honda Civic at a convenience store in West Virginia and went inside to buy a snack. When he came out, his car was gone. Because he had left his cell phone in the car, Montgomery was able to track its location to a carwash in Morehead, Kentucky. Montgomery notified the Morehead Police Department. Officer Ron Overstreet went to the carwash and located the vehicle parked in one of the bays. Trent was sitting in the driver's seat and a woman was in the passenger seat. Officer Overstreet took Trent into custody. A flashlight on Trent's belt was found to contain methamphetamine and Xanax.

On November 15, 2019, a grand jury charged Trent with multiple counts, including the offense of possession of handgun by convicted felon (Count Six).

On September 1, 2020, the case went to trial. It was the first jury trial conducted in Rowan County following the pandemic shutdown. After the jury was selected but before opening statements, the handgun charge was dismissed. The jury convicted Trent of receiving stolen property ($10,000.00 or more), first-degree possession of a controlled substance, third-degree possession of a controlled substance, and giving false information to a police officer. As noted earlier, Trent was sentenced to ten-years' imprisonment.

On appeal, Trent first argues that reversible error occurred when the trial court told half the prospective jurors that Trent was facing a criminal gun charge. Trent requests palpable error review because the issue was not preserved.

RCr[1] 10.26 governs our treatment of palpable error:

> A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

*Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006), further sets forth the elements of palpable error:

> For an error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable. A palpable error must involve prejudice more egregious than that occurring in reversible error[.] A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus, what a palpable error analysis boils down to is whether the reviewing court believes there is a substantial possibility that the result in the case would have been different without the error.

(Internal quotation marks and footnotes omitted.)

Due to COVID-19 spacing precautions, the trial court divided the jury pool into four groups and conducted *voir dire* with one group at a time. As Trent explains, the trial court told the third group that "[t]his criminal case involves

---

[1] Kentucky Rules of Criminal Procedure.

allegations that the defendant, Mr. David Trent, had in his possession a stolen vehicle and when he was stopped or questioned, he also had in his possession a handgun and drugs." The trial court told the fourth group that "Mr. Trent, as he sits here as the defendant, and he's presumed innocent, he's charged with being in possession of a stolen vehicle, of a firearm being in his possession, and some drug-related issues with regard to the stop." After the jury was chosen but before opening statement, the Commonwealth moved to dismiss four counts -- including Count Six, the charge of possession of a handgun. The trial court granted the motion.

Trent argues that even if the charge had not been dismissed, the jury still should not have heard about the gun because proof of the felony conviction would have been presented in a bifurcated proceeding, citing *Ward v. Commonwealth*, 568 S.W.3d 824 (Ky. 2019) (handgun charge should be severed from other charges to avoid prejudice from jury's learning of otherwise inadmissible criminal history in guilt phase). Trent submits that "the error lingered because the court never corrected its mistake via an admonition." Furthermore, he argued that what the trial court told members of the jury was "incorrect, irrelevant and unduly prejudicial" and that "[t]the error was clear or plain and resulted in manifest injustice."

The Commonwealth responds that while no Kentucky case is directly on point, *Jarvis v. Commonwealth*, 960 S.W.2d 466 (Ky. 1998), is helpful. In *Jarvis*, our Supreme Court found no abuse of discretion where the trial court read Counts I and II of an indictment to the jury while a motion to dismiss Count II was pending. In his reply brief, Trent argues that *Jarvis* is distinguishable because the trial court informed the jury that Count II was later dismissed. Further, that the dismissed charge in *Jarvis* was for possession of cocaine, which "does not suggest or imply a prior felony conviction like the [handgun possession] charge in the present case . . . ."

We agree with Trent that *Jarvis* can be distinguished on its facts, but we are nonetheless not persuaded that palpable error occurred in the case before us. In *Stark v. Commonwealth*, 828 S.W.2d 603 (Ky. 1991), *overruled on other grounds by Thomas v. Commonwealth*, 931 S.W.2d 446 (Ky. 1996), the appellant asserted that it was "error for the trial court to dismiss charges without explanation to the jury inasmuch as the judge discussed each count of the indictment during voir dire[.]" *Id.* at 608. The issue in *Jarvis* was also not preserved. Our Supreme Court held that appellant's assertion of error failed to rise to the level of manifest injustice; thus, there was no palpable error. RCr 10.26. We agree that the error alleged by Trent fails to rise to the level of manifest injustice.

We also find support for our conclusion in *Turner v. Commonwealth*, No. 2016-CA-001443-MR, 2017 WL 5508759, *4 (Ky. App. Nov. 17, 2017).[2] In Turner, the trial court briefly and inadvertently referenced a PFO II count while reading the charges to the jury panel. *Id.* The court did not mention the nature of the defendant's prior convictions, and the PFO II count was dismissed before final sentencing. *Id.* Another panel of this Court held that although the reference was improper, the trial court did not abuse its discretion by denying the motion for a mistrial. *Id.*

In the case before us, the trial court briefly mentioned that Trent was in possession of a handgun or firearm. The trial court did not mention that Trent was a convicted felon, and the handgun count was dismissed before opening statement. Trent's assertions of error fall far short of manifest injustice. Thus, no palpable error occurred. RCr 10.26.

Next, Trent argues that "reversible error occurred when the parties did not address [his] request for a speedy trial within 180 days of his request." Trent contends that the issue is preserved to the extent that he had control over it and requests palpable error review to the extent that the issue is not preserved.

---

[2] *See* Kentucky Rules of Civil Procedure (CR) 76.28(4)(c) ("[U]npublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court.").

On January 3, 2020, at his first post-arraignment hearing, Trent told his attorney that he would like to file for a speedy trial. Defense counsel responded, "Okay." Trial was scheduled for March 10, 2020.

On February 7, 2020, defense counsel reminded the court that Trent had requested a speedy trial and that trial was scheduled for March 10, 2020. The court asked Trent if he wanted to go forward with trial on that date, and Trent responded that he did.

On February 27, 2020, Trent's counsel at that time, Sarah Dailey, filed a motion to continue the jury trial to a later date. On March 20, 2020, attorney Jeffery Lovely filed an entry of appearance as conflict counsel for Trent. And then came the series of upheavals in scheduling occasioned by the pandemic.

As the Commonwealth notes, on April 1, 2020, the Kentucky Supreme Court entered Administrative Order 2020-16 ordering all judicial facilities closed because of the COVID-19 pandemic. Subsequently, Administrative Order 2020-40 ordered all jury trials postponed until August 1, 2020.

On April 3, 2020, Trent's new counsel made his first appearance. He explained by Zoom that he had spoken with Trent by phone but that he had not yet met with him due to COVID-19 restrictions. He requested that the court schedule

a pretrial conference and review Trent's bond. The court set a status hearing for May 1, 2020.

At the May 1, 2020, Zoom status hearing, defense counsel explained that he still had not met with Trent due to the pandemic and asked to pass the matter until June so they could meet and discuss a plea offer in person. The trial court agreed to do so, and there was a discussion about bond. The court advised that it did not feel comfortable reducing the bond any further. Trent interjected that he had requested a speedy trial on January 3rd and asked if his constitutional right to the Sixth Amendment was still in effect. The trial court explained that given the pandemic, "we will set your case for trial as soon as possible when we're allowed to." Trent asked again about his right to a fast and speedy trial. The trial court stated that those are all issues for an appellate court, reiterated that it was not going to reduce the bond, and stated that it "will set the trial as quickly as our court system allows us to." The trial court then scheduled a June hearing as requested by Trent's counsel.

At the June 5, 2020, Zoom status conference, the trial court set a trial date. The court advised that they "do not have the courtroom in August here and we're not supposed to start jury trials until August 1st, so the earliest date would be in September." Trent again brought up the 180 days. The trial court stated: "I'm going to give you the first trial date that we have available since the lockdown."

The trial court scheduled a pretrial conference for August 28, 2020, and trial for September 1, 2020.

On June 17, 2020, Trent filed a handwritten document stating that he "would like to file a motion for new counsel and would like to fire" his attorney. Trent stated that he felt that counsel was not representing him to the best of his ability and that he (Trent) did not feel comfortable going forward.

On July 10, 2020, Trent filed another handwritten document[3] stating that he "would like to file a motion to dismiss" all charges on grounds of failure to prosecute. Trent stated that he invoked his right to a fast and speedy trial on January 3, 2020, and that as of July 1, 2020, "the 180 day mark has been exceeded[.]" Trent objected to the August 28, 2020, pretrial date and the September 2, (*sic*) 2020, trial date as being past the 180-day mark.

On August 7, 2020, the court conducted a status conference. Defense counsel advised the court that Trent had rejected the Commonwealth's offer. The trial court set a final pretrial date. Trial was conducted on September 1, 2020.

Trent argues that he made diligent efforts to let the parties know that he wanted a speedy trial, that he wanted it within 180 days, and that he wanted his charges dismissed after 180 days. Trent asserts that although a trial was held eight

---

[3] In his Appellant's brief, Trent refers to this and the preceding document requesting new counsel as "letters." Neither contains a certificate of service or otherwise reflects that it was properly served.

months after his initial request, "the parties did not address his request that it be held within a specific timeframe or his motion to dismiss his charges when it was not."

We first address the 180-day timeframe. Counsel explains at footnote 1 of Appellant's brief that it is likely that Trent got the 180 days from "analogous concepts" in KRS[4] 440.450 and KRS 500.110.[5] Although those statutes provide that a prisoner shall be brought to trial within 180 days upon appropriate request, neither statute is applicable to Trent. Thus, Trent cannot claim that he had a statutory right to a speedy trial within 180 days which was violated. *Dunaway v. Commonwealth*, 60 S.W.3d 563, 569 (Ky. 2001). However, Trent "still has the right to a speedy trial; that right is simply protected by other provisions." *Id.* at 569.

> [W]here, as here, a defendant is seeking a speedy trial of an offense for which he is being held in pre-trial incarceration . . . a speedy trial demand is treated as an assertion of the right to a speedy trial guaranteed by the Sixth Amendment of the United States Constitution and Section 11 of the Constitution of Kentucky.

---

[4] Kentucky Revised Statutes.

[5] KRS 440.450, entitled "Interstate agreement on detainers[,]" is "a statutory scheme which prescribes procedures by which an out-of-state prisoner may demand the speedy disposition of charges pending against him in Kentucky." *Ward v. Commonwealth*, 62 S.W.3d 399, 402 (Ky. App. 2001). KRS 500.110 "applies only when a defendant is incarcerated for one offense and a detainer has been lodged against him to answer for another offense." *Gabow v. Commonwealth*, 34 S.W.3d 63, 69 (Ky. 2000), *overruled on other grounds by Crawford v. Washington*, 541 U.S. 36, 60-61, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

> Four factors are considered in determining whether the Constitutional right to a speedy trial has been violated: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972).

*Gabow*, 34 S.W.3d at 69-70.

Trent contends that he asked the trial court to dismiss his case and that the record does not indicate that "the trial court undertook a proper analysis and does not state any factfinding upon which the decision to deny [his] motion was made." He requests relief in accordance with this Court's decision in *Clark v. Commonwealth*, 608 S.W.3d 175, 180 (Ky. App. 2020). In *Clark*, the defendant entered a guilty plea and reserved his right to appeal the trial court's order denying his motion to dismiss for failing to conduct a speedy trial. Although the parties presented arguments based upon the four *Barker* factors, the court's order did not indicate that it had conducted a *Barker* analysis; nor did it reveal the factfinding upon which its denial was based. This Court concluded that the order was insufficient. We vacated and remanded with instructions that the trial court conduct a proper *Barker* analysis and make specific findings of fact supporting its decision.

The document that Trent filed on July 10, 2020, in which he stated that he would like to file a motion to dismiss all charges, is not a proper motion. Trent was not acting properly *pro se* because he was still represented by counsel.

-11-

*See Commonwealth v. Martin*, 410 S.W.3d 119, 124 n.2 (Ky. 2013) ("Until he unequivocally invokes his right of self representation, a defendant represented by counsel has no right to file *pro se* motions. How a court deals with such motions is thus a matter of discretion.").

Nevertheless, we conclude that Trent did properly invoke his constitutional right to a speedy trial on February 7, 2020, when defense counsel reminded the court that he had requested a speedy trial. In *Goben v. Commonwealth*, 503 S.W.3d 890, 904 (Ky. 2016), our Supreme Court explained as follows:

> Typically, we have accepted such assertions of the right as preserving post-trial claims that the right was violated, even though the trial court was never asked to address such a claim. . . . [G]iven our usual practice with speedy trial motions and the parties' apparent reliance on that practice, we proceed here as if the asserted error were preserved, resolving factual ambiguities, if any, in favor of the trial court's Judgment.

Although the Commonwealth contends that Trent waived his constitutional right to a speedy trial pursuant to the Sixth Amendment of the United States Constitution, we disagree. He never ceased to assert that right and consistently and vehemently demanded it throughout the proceedings. But we are persuaded that notwithstanding his assertion of the right, the *Barker* analysis as applied to his case establishes that his trial was conducted as speedily as the exigent circumstances of the pandemic permitted. There was no waiver of the

right by Trent, and there was no violation of the right by the Commonwealth or the trial court.

The first factor we must consider under *Barker* is the length of the delay.

> Under the *Barker* analysis, we begin by asking whether the length of the delay was presumptively prejudicial: "[t]he length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors. . . ." *Id.* at 530, 92 S. Ct. 2182. **However, no precise amount of time is presumptively prejudicial, as the length of delay must be considered within the particular context of each case**. *McDonald v. Commonwealth*, 569 S.W.2d 134, 136 (Ky. 1978).
>
> The length of delay is measured as "the time between the earlier of the arrest or the indictment and the time trial begins." *Dunaway v. Commonwealth*, 60 S.W.3d 563, 569 (Ky. 2001) (citing *Dillingham v. United States*, 423 U.S. 64, 96 S. Ct. 303, 46 L. Ed. 2d 205 (1975)). . . .
>
> Each delay must be considered within its own context. *Barker*, 407 U.S. at 522, 92 S. Ct. 2182. A delay that can be tolerated for an ordinary street crime is considerably less than for a more serious charge. *Id.* at 531, 92 S. Ct. 2182.

*McLemore v. Commonwealth*, 590 S.W.3d 229, 241 (Ky. 2019) (emphasis added). Our Supreme Court "has generally considered delays of over one year to be presumptively prejudicial." *Goncalves v. Commonwealth*, 404 S.W.3d 180, 199 (Ky. 2013).

-13-

In the case before us, Trent was arrested on September 17, 2019, and his trial began on September 1, 2020, which does approach the one-year mark. This was not a very complicated case. Nevertheless, the majority of the time at issue occurred during the unique and critical context of the pandemic. The pandemic created exigent circumstances beyond anyone's control that affected every aspect of government -- and clearly our court system. The trial court did its best and scheduled Trent's trial for the first available date after the lockdown. Under the particular circumstances of this case, we conclude that the delay was not presumptively prejudicial. Accordingly, we do not reach the remaining *Barker* factors.

Trent's third and last argument is that reversible error occurred when the Commonwealth improperly characterized a prior misdemeanor conviction in West Virginia as a felony conviction under Kentucky law during the penalty phase of the trial. Trent acknowledges that the issue is not preserved and seeks palpable error review. Trent admits that he did not receive the maximum sentence, but he contends that the "Commonwealth snuck a prior felony conviction that did not exist into the jury's pool of consideration and it may have had a damaging effect on the penalty the jury ultimately recommended." Once again, Trent's speculative argument fails to rise to the level of manifest injustice.

We affirm the judgment of the Rowan Circuit Court.

-14-

ALL CONCUR.


BRIEFS FOR APPELLANT:        BRIEF FOR APPELLEE:

Steven J. Buck                Daniel Cameron
Frankfort, Kentucky          Attorney General of Kentucky

                                      Courtney J. Hightower
                                      Assistant Attorney General
                                      Frankfort, Kentucky